IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

VILMA ESTHER ADORNO MARRERO

Debtor

CASE NO. 19-05714

CHAPTER 13

## OPINION AND ORDER

This case is before the court upon the *Trustee's Motion Requesting Entry of Order to Inform* (the "*Motion for Order*", dkt. #23), requesting an order directing the Debtor to inform whether they received a "special government bonus" (id., p. 1, ¶ 2), the amount received, and when such bonus would be submitted to fund the Debtor's plan. Also pending before this court are the following related motions: Debtor's *Objection to the Chapter 13 Trustee's Motion Requesting Entry of Order* (dkt. #29); Debtor's *Statement of Purpose of Amended Schedules A/B and C* (dkt. #35); *Trustee's Objection to Schedule B and Claimed Exemption in Schedule C* (dkt. #37); *Trustee's Position and Objection to Debtor's Retention to the PAD Bonus* (dkt. #38); Debtor's *Reply to Trustee's Objection to Schedule B and Claimed Exemption in Schedule C* (dkt. #54); *Trustee's Position in Compliance with Court Order and Request for Order* (dkt. #56); and Debtor's *Reply to Trustee's Position in Compliance with Court Order and Request for Order* (dkt. #58).

For the reasons set forth below, the court grants in part the Chapter 13 Trustee's (hereinafter referred to as "Trustee") *Motion for Order* (dkt. #23). The court also grants in part the *Trustee's Objection to Schedule B and Claimed Exemption in Schedule C* (dkt. #37) as to the Trustee's objection to the Debtor's exemption over the special bonus. At this juncture, for the reasons explained herein, to adjudicate whether the Debtor may retain the special bonus or a portion of the same, the Debtor must submit to the court the amount of the special bonus received, and the expenses incurred, accompanied by supporting documentation.

-1-

**Jurisdiction**

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A) and (B). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

**Factual and Procedural Background**

1. The Debtor filed the instant bankruptcy petition under Chapter 13 of the Bankruptcy Code on October 2, 2019.

2. The 341 meeting of creditors was scheduled and held on November 13, 2019 (dkt. #10).

3. The amended Chapter 13 plan of reorganization dated November 12, 2019, was confirmed on December 11, 2019 (dkt. # 9, 14 & 15).

4. On December 15, 2022, the Trustee filed a *Motion Requesting Entry of Order to Inform* requesting the court to order the Debtor to inform whether she received the special government bonus, the amount received, and when she would be submitting these monies to fund the plan (dkt. #23).

5. On February 24, 2023, the Debtor filed an *Objection to the Chapter13 Trustee Motion Requesting Entry of Order* (dkt. #29).

6. On March 17, 2023, the Debtor filed a *Statement of Purpose of Amended Schedules A/B and C* disclosing deposits of money in the amount of $5,000.00 in a Banco de Popular de Puerto Rico ("BPPR") checking account (*Amended Schedule A/B*, dkt. #35, p. 4, line 17.3), and a BPPR checking account in the amount of $5,000 claimed as exempt under 11 U.S.C. § 522(d)(5) *Amended Schedule* C, dkt. #35, p. 9) with the following description, "[i]n the event the Honorable Court considers that the negotiated economic stimulus incentive (DAP Bonus) is property of the estate" (*Amended Schedule* C, dkt. #35, pp. 1, 9).

7. On March 20, 2023, the Trustee filed an *Objection to Schedule B and Claimed Exemption in Schedule C* (dkt. #37), and *Position and Objection to Debtor's Retention to the PAD Bonus* (dkt. #38).

8.      On March 22, 2023, the court ordered the Debtor to state her position within twenty-one days to the Trustee's objection at docket number 38 (dkt. #40).

9.      On April 12, 2023, the Debtor complied with the court's order and filed a *Motion to Inform* (dkt. #48).

10.     On April 13, 2023, the court ordered the Trustee to file his position within twenty-one (21) days to Debtor's *Motion to Inform* (dkt. #51).

11.     On May 2, 2023, the Debtor filed a *Reply to Trustee's Objection to Schedule B and Claimed Exemption in Schedule C* (dkt. #54).

12.     On May 4, 2023, the Trustee filed his *Position in Compliance with Court Order and Request for Order* (dkt. #56).

13.     On May 18, 2023, the Debtor filed her *Reply to Trustee's Position in Compliance with Court Order and Request for Order* (dkt. #58).

**Position of the Parties**

I.      **Debtor's Position**

The Debtor argues that the possibility of government employees receiving a negotiated economic stimulus incentive in the form of a bonus stems from the central government debt adjustment plan as part of the Puerto Rico Oversight Management and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101 *et seq*. The bonus responds to the deficiency in the salaries of Puerto Rico's public servants created under PROMESA. The Debtor also claims that the Trustee did not include the special bonus into the plan.[1]

The Debtor argues that the special bonus is not property of the estate under 11 U.S.C. § 541(a) because the special bonus did not exist at the time the petition was filed. The Debtor claims that had it existed she would have claimed the corresponding exemption to the same. With respect to 11 U.S.C. § 1306, the Debtor contends that the same is limited to "property of the kind specified in such section that [the] debtor acquires after the commencement of the case…" (dkt. #29, p. 2, ¶

---

[1] See dkt. #29, p. 2, ¶ 3. However, at this time, neither the Trustee nor the Debtor have moved the court for a post-confirmation modification under 11 U.S.C. § 1329.

-3-

4, quoting 11 U.S.C. § 1306(a)(1)). And, "[i]f by definition 'property of the kind specified' in bankruptcy code section 541 did not exist at the time of the creation of the estate[,] it cannot exist, [and] it cannot be acquired[] after the commencement of the case" (id.). The Debtor argues that the bonus is not property of the estate under 11 U.S.C. § 1306(a)(1) because it does not meet the requirement of "all property of the kind specified in such section" (dkt. #54, p. 2, ¶ 5).

The Debtor also avers that pursuant to 11 U.S.C. § 1306(a)(2), the special bonus is not property of the estate because the Debtor did not "earn" the bonus "from services performed by the debtor" (dkt. #54, p. 2, ¶ 6). The special bonus does not constitute post-petition earnings and wages. The Debtor also contends that "the DAP bonus is not disposable income because the negotiated economic stimulus incentive received by some government employees '…who have been affected by the budget cuts…' looks very much like '… (other than payments made under Federal Law relating to the national emergency declared by the President under the National Emergency Act (50 U.S.C. 1601 et seq.) with respect to the coronavirus disease in 2019 (COVID 19')…)' (1325(b)(2). Pandemic payments that enjoyed exemption from being considered disposable income. This time the economic stimulus incentive is provided by the territorial government of Puerto Rico." (Dkt. #29, p. 3, ¶ 5).

The Debtor further argues that the special bonus is not disposable income because the "negotiated economic stimulus incentive, the DAP bonus, has yet to pass the '… less amounts reasonably necessary to be expended… for the maintenance or support of the debtor or a dependent of the debtor…' test as per Bankruptcy Code Section 1325(b)(2)(A)(i). Only after debtor exercises h[er] 1325(b)(2)(A)(i) prerogative does the disposable income concept comes into effect." (Dkt. #29, p. 3, ¶ 6). Moreover, the Debtor's amended plan feasibility has already been established as a confirmation requirement under 11 U.S.C. § 1325(a)(6). Feasibility is a confirmation issue. See dkt. #29, p. 4, ¶ 8.

The Debtor informed the court that she exercised her Section 1325(b)(2)(A)(i) prerogative and that prior to December 15, 2022, she used part of the special bonus for various auto repairs on her 2012 Suzuki Vitara, church contributions, for legal fees not related to the bankruptcy case, for

an emergency fund, and other reasonable and necessary expenses for her maintenance and support and that of her dependents (dkt. #48, p. 1, ¶ 2). The Debtor also argues that for the special "…bonus to be reasonable and justified for her maintenance and support and of her dependents, it first must be property of the estate. Petitioner is arguing it is not" (dkt. #54, p. 2, ¶9). However, the Debtor has not disclosed the specific amount of monies she received from the bonus nor submitted the paystub that evinces the amount of the bonus because her position is that the special bonus is not property of the estate nor disposable income.

The Debtor filed amended Schedules A/B and C on March 17, 2023, to include the special bonus in both schedules with the following description, "[i]n the event the Honorable Court considers that the negotiated economic stimulus incentive (DAP Bonus) is property of the estate." (*Amended Schedule A/B*, dkt. #35, pp. 4, 9). The Debtor amended Schedule C to include the special bonus as exempt under 11 U.S.C. § 522(d)(5). See *Amended Schedule* C, dkt. #35, pp. 1, 9

As to the Chapter 13 Trustee's objection to Schedule B and claimed exemption, the Debtor's response was the following: "[t]he Thurston case cited by the Chapter 13 Trustee references Massachusetts Homestead Statute. It is not applicable to the facts of this case. The Garcia Matos case cited by the chapter 13 trustee is also not applicable to the facts of this case. The DAP bonus is not a post-petition tax refund. Nor can it be compared to one." (Dkt. #54, pp. 1-2, ¶¶ 3-4).

## II. Chapter 13 Trustee

The Trustee objects to the claimed exemption pursuant to 11 U.S.C. § 522(d)(5), averring that the special government bonus is property of the estate under 11 U.S.C. § 1306 and disposable income under 11 U.S.C. § 1325(b). Thus, the same cannot be claimed as exempt. The Trustee argues that there are courts that have interpreted 11 U.S.C. § 522(b)(1) as only providing exemption over property of the estate under 11 U.S.C. § 541, and not under 11 U.S.C. § 1306. In support thereof, the Trustee cites In re Thurston, 2007 WL 1860892, *8, Bankr. LEXIS 2207 (Bankr. D. Mass. 2007), and In re Garcia Matos, Case No. 10-10289 [dkt. #43] (Bankr. D.P.R. March 16, 2011) ("[t]he income tax refunds, as projected disposable income, are subject to the

deductions in sections 1325(b) (2, 3), but may not be exempt as the same are property of the estate under 11 U.S.C. § 541(a)."), *rev'd*, 478 B.R. 506 (B.A.P. 1st Cir. 2012).

The Trustee argues that the Debtor is requesting an exemption for post-petition earnings and wages, which is specifically excluded from the estate pursuant to 11 U.S.C. § 541(a)(6). Post-petition wages and earnings become property of the estate pursuant to 11 U.S.C. § 1306. Section 541 pertains to property acquired prior to the filing of the bankruptcy petition. Post-petition earnings and wages are not property of the estate pursuant to Section 541. The Trustee further argues that reading 11 U.S.C. § 1306 in conjunction with 11 U.S.C § 522(b)(1) can lead to the conclusion that a person may not claim post-petition wages and earnings as exempt under 11 U.S.C. § 522(d). This reasoning is logical since the debtor must use these funds to fund a Chapter 13 plan and if the debtor claims the same exempt is contrary to the principle of Chapter 13. The Trustee's position is that these funds are disposable income which must be used to fund the plan pursuant to 11 U.S.C. § 1325(b), which remains subject to modification pursuant to 11 U.S.C. § 1329.

The Trustee further contends that the Debtor has not placed the Trustee in a position to determine that the retention of the funds in question is reasonable and justified and is not contrary to the best interests of creditors in the case. Moreover, the Trustee does not know if the exemption claimed in the amount of $5,000.00 consists in its entirety of the special bonus that the Debtor received. Thus, the Trustee requests the pay stub to verify Debtor's actual financial situation and whether the Debtor had other bonuses or incentives and/or increased salary at her disposal. The Debtor argued that the funds were needed for her maintenance and support but the Trustee avers she has failed to submit the pay stub that includes the special bonus received, and has not provided evidence in support of her allegations as to the expenses which were covered with monies from the PAD bonus.

### Legal Issues

The first issue before the court is whether the special bonus received post-confirmation by the Debtor is property of the estate pursuant to 11 U.S.C. § 1306(a) and whether the special bonus

constitutes disposable income pursuant to 11 U.S.C. § 1325(b). If the bonus is property of the estate, then the court must determine whether the Debtor may amend her claimed exemptions to include estate property under 11 U.S.C. § 1306(a) as post-petition income/earnings (special bonus) or whether the exemptions are limited to property of the estate under 11 U.S.C. § 541(a).

**Applicable Law & Analysis**

(A)     **Property of the Estate**

Section 541 of the Bankruptcy Code, 11 U.S.C. § 541(a), defines "property of the estate" as follows:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> …
> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.
>
> (7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a)(6), (7).

Section 1306 of the Bankruptcy Code, 11 U.S.C. § 1306, expands "property of the estate" as follows:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title---
>
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.
>
> (b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

11 U.S.C. § 1306.

"The statutory definition of property of the estate is intentionally broad in all bankruptcy cases; it is even broader in a Chapter 13 case than in cases under other chapters of the Code." Keith M. Lundin, Lundin on Chapter 13, § 46.1, ¶ [3] (last visited November 29, 2023). "As if §541(a) was not broad enough, in a Chapter 13 case, there is more to property of the estate than under any other chapter of the Code." Id., at § 46.1, ¶ [4]. "The definition of 'property of the estate' found in section 541 applies in chapter 13 cases, as modified by section 1306(a), principally to include property and earnings of the debtor acquired during the pendency of the chapter 13 case." Richard Levin & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1306.02[1] (16th ed. 2023).

"Property of the estate for purposes of chapter 13 also includes earnings from services of the debtor performed while the chapter 13 case is pending. Section 1306(a)(2) nullifies the effect of section 541(a)(6) insofar as the latter excludes from the definition of property of the estate earnings from postpetition services of the debtor." Id., at ¶ 1306.02[3]. "The wages earned by the debtor are property of the Chapter 13 estate. Postpetition wages are property of the Chapter 13 estate notwithstanding that some or all of those wages were assigned or attached voluntarily or involuntarily before the petition. Payments to the debtor after the petition in lieu of wages are property of the Chapter 13 estate—for example, postpetition payments to the debtor on account of a prepetition noncompete agreement are property of the Chapter 13 estate." Keith M. Lundin, Lundin on Chapter 13, § 46.3, at ¶ [1] (last visited November 29, 2023). Moreover, the U.S. Court of Appeals for our First Circuit (the "First Circuit") has held that upon confirmation, "the estate does not cease to exist" and thus, it continues to be funded by the debtor's "regular income and post-petition assets as specified in §1306(a)." Barbosa v. Soloman, 235 F. 3d 31, 37 (1st Cir. 2000). See also Yuet Yiu Chung-Chan v. Bankowski (In re Yuet Yiu Chung-Chan), 2009 WL 3837846, *2, 2009 U.S. Dist. LEXIS 106857, at *5 (D. Mass. 2009). Social Security benefits are specifically excluded from property of the estate pursuant to 42 U.S.C. §407(b). Also excluded are stimulus payments, technically tax rebates, under the Consolidated Appropriations Act of 2021. See 8 Collier on Bankruptcy ¶ 1306.02[2].

The court notes that the Bankruptcy Code does not define the terms "earnings," "income," "wages," nor "salary". See 11 U.S.C. § 101.

(B) **Does the PAD Bonus Constitute Income?**

To proceed with our analysis, the first question that must be answered is whether the PAD bonus ("Plan de Ajuste de la Deuda" translated as "Debt Adjustment Plan") received by government employees in December of 2022 is considered income.

In a press release published on the official government page of the Commonwealth of Puerto Rico on November 14, 2022, the following is explained as to the PAD bonus:

> Employees who qualify to receive the PAD bonus are those public servants eligible to receive the Christmas bonus and who are employees of a public entity that is subject to the certified central government fiscal plan. The government of Puerto Rico managed to get the Financial Oversight and Management Board to include the maximum number of public servants to receive the PAD bonus, since they are the ones who must annually certify eligibility, as long as the financial results established in the certified fiscal plan are exceeded. **Like the Christmas bonus, the PAD bonus is considered part of the ordinary income of public servants and will be subject to the corresponding federal and state withholdings**.

Press Release, Commonwealth of Puerto Rico, Gobernador Pierluisi Detalla Desembolso de Bono del Plan de Ajuste a Servidores Públicos (November 14, 2022), https://www.fortaleza.pr.gov/comunicados/gobernador-pierluisi-detalla-desembolso-de-bono-del-plan-de-ajuste-a-servidores-publicos (translation and emphasis ours).

Because the PAD bonus received by government employees is considered ordinary income in the same manner as the Christmas bonus received by government employees, the Commonwealth of Puerto Rico did not enact any pertinent tax provisions in the Internal Revenue Code for a New Puerto Rico of 2011, as amended, 13 L.P.R.A. §§ 30011 et seq., for the taxable year 2022 to exempt the PAD bonus from being taxed as ordinary income.

Thus, this court concludes that the PAD bonus received by the government employees of Puerto Rico whom have filed for bankruptcy prior to their receipt constitutes property of the estate from post-petition earnings or wages from services rendered pursuant to 11 U.S.C. § 1306(a)(2).

(C) **Disposable Income Pursuant to 11 U.S.C. §1325(b) and the Interplay Between 11 U.S.C. §§ 1322 & 1329**

Section 1322(a)(1) of the Bankruptcy Code provides that the plan "shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). "Section 1322(a)(1) has also been used as a back door around the debate whether the disposable income test in § 1325(b) applies at modification after confirmation under § 1329. As the bankruptcy court explained in In re Profit[2], on the trustee's motion to modify to increase payments to creditors under § 1329(a)(1), without resort to § 1325(b), § 1322(a)(1) requires the debtor to submit additional earnings or income to fund the increase in payments to creditors." Keith M. Lundin, Lundin on Chapter 13, § 113.5, at ¶ 6, LundinOnChapter13.com (last visited November 29, 2023).

Section 1325(b) of the Bankruptcy Code, 11 U.S.C. § 1325(b), provides in pertinent part as follows:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan, unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended.

---

[2] In re Profit, 269 B.R. 51 (Bankr. D. Nev. 2001), *rev'd on other grounds,* 283 B.R. 567 (B.A.P. 9th Cir. 2002).

11 U.S.C. § 1325(b).

"Section 1325(b)(1) permits inquiry into the debtor's ability to pay only upon an objection to confirmation filed by the chapter 13 trustee or the holder of an allowed unsecured claim." 8 Collier on Bankruptcy ¶ 1325.11[2]. "When an objection to confirmation is filed pursuant to section 1325(b)(1) and the plan does not satisfy the full payment test of subsection 1325(b)(1)(A), subsection 1325(b)(1)(B) requires the court to determine whether the debtor has committed to all of the debtor's projected disposable income for the applicable commitment period, as determined under section 1325(b)(4), to the payment of unsecured creditors." Id., at ¶ 1325.11[4].

The disposable income calculation of Section 1325(b) begins with the debtor's current monthly income (pursuant to Section 101(10A)[3]), which is defined as a debtor's average monthly income received six months prior to filing the bankruptcy petition. In Hamilton v. Lanning, 560 U.S. 505 (2010), the U.S. Supreme Court held that the term "projected", as used in 11 U.S.C. § 1325(b)(1)(B), "gave the bankruptcy court the flexibility to adjust the debtor's current monthly

---

[3] The term "current monthly income" is defined under the Bankruptcy Code as follows:

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—
  (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
  (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
(B)
  (i) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent); and
  (ii) excludes—
    (I)   benefits received under the Social Security Act (42 U.S.C. 301 et seq.);
    (II) payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes;
    (III) payments to victims of international terrorism or domestic terrorism, as those terms are defined in section 2331 of title 18, on account of their status as victims of such terrorism; and
    (IV) any monthly compensation, pension, pay, annuity, or allowance paid under title 10, 37, or 38 in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services, except that any retired pay excluded under this subclause shall include retired pay paid under chapter 61 of title 10 only to the extent that such retired pay exceeds the amount of retired pay to which the debtor would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title.

11 U.S.C. § 101(10A).

-11-

income to take into account changes in the debtor's income that are known or virtually certain at the time of confirmation. The Court found that the meaning of the term 'projected' could consider known or virtually certain changes in income. […]  However, the U.S. Supreme Court emphasized that such adjustments to the statutory formula for disposable income should be made 'only in unusual cases' where there is known or virtually certain information about changes in the components in the formula that are based on actual income." 8 <u>Collier on Bankruptcy</u> ¶ 1325.11[4][a].

In turn, Section 1329(a) of the Bankruptcy Code, 11 U.S.C. § 1329(a), provides in pertinent part as follows:

[a]t any time after confirmation of the plan but before the completion of plan payments under such plan, the play may be modified, upon request if the debtor, the trustee, or the holder or an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

(4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) if the debtor documents the cost of such insurance and demonstrates that—

…

11 U.S.C. § 1329(a).

Section 1329(b) provides in pertinent part: "(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under [Section 1329(a)]." 11 U.S.C. § 1329(b)(1).

(D)      **Does 11 U.S.C. § 1325(b) Apply in a Post-Confirmation Modification Scenario?**

-12-

"The Bankruptcy Code is unclear whether the disposable income test in §1325(b) applies at modification after confirmation. The reported decisions on the question are fractured." Keith M. Lundin, Lundin on Chapter 13, § 126.3, at ¶ 1, LundinOnChapter13.com (last visited November 29, 2023). Commentator Lundin explains his analysis as to whether Section 1325(b) applies in a post-confirmation modification setting as follows:

> On one hand, 11 U.S.C. § 1329(b)(1) specifically references four sections of the Code that 'apply to any modification,' and § 1325(b) is not among the listed sections. Some courts have interpreted this omission as evidence that Congress did not intend the bankruptcy courts to 're-examine the debtor's disposable income before deciding whether to approve a postconfirmation modification.'

> On the other hand, § 1325(a) is among the sections listed in § 1329(b) to be applied to a modified plan. It can be argued that the cross-reference to § 1325(b) in § 1325(a) requires bankruptcy courts to apply both subsections. Section 1325(a) begins 'except as provided in subsection (b) … ' One rule of statutory construction instructs that the exception for § 1325(b) in § 1325(a) captures both subsections; § 1329(b)(1) would then require application of § 1325(a) and (b) to any modification after confirmation.

> Alternatively, §1325(a)(1) requires that the plan 'complies with the provisions of this chapter.' The disposable income test in §1325(b) is a 'provision of this chapter' incorporated by §1325(a) into §1329(b)(1). This argument runs squarely into other rules of construction that argue against redundancy in statutes—most of § 1329(b)(1) becomes redundant if all of Chapter 13 becomes applicable at postconfirmation modification by reference to §1325(a). There is always a rule of statutory construction to give you the answer you seek.

> Though there is no illuminating legislative history, the language of §§1329 and 1325 **somewhat favors the interpretation that §1325(b) applies at modification after confirmation.** A majority of the reported decisions apply the disposable income test at modification of a confirmed plan, though many do so without comment or analysis.

Keith M. Lundin, Lundin on Chapter 13, § 126.3, at ¶ 2-5, LundinOnChapter13.com (last visited November 29, 2023) (boldface added).

However, in the instant case, this court finds that it does not have to adjudicate whether Section 1325(b) applies in all post-confirmation modification scenarios, and thus limits its analysis as to whether Section 1325(b) applies when the post-confirmation modification is proposed by the Chapter 13 Trustee and the debtor opposes the same. There is no motion for post-confirmation modification before the court, but a request by the Chapter 13 trustee for the Debtor to pay the

PAD bonus to fund the plan. In this particular scenario, Lundin concludes that Section 1325(b) *is inapplicable* based upon the statutory construction of the statute itself. Lundin concludes the following:

> At the very least, the courts should agree that the disposable income test *does not* apply when the proponent of the modification is the trustee or the holder of an allowed unsecured claim and the objecting party is the debtor. This would be true as a matter of statutory construction because § 1325(b) applies only upon objection to confirmation by 'the trustee or the holder of an allowed unsecured claim.'

Keith M. Lundin, Lundin on Chapter 13, § 126.3, at ¶ 7, LundinOnChapter13.com (last visited November 29, 2023).

Commentators Levin and Sommer likewise conclude that Section 1325(b) *does not apply* to post-confirmation modification based upon the timing of current monthly income which is calculated six months prior to the debtor having filed a bankruptcy petition. "Thus, the debtor's 'current monthly income' is normally fixed at the time of the petition and does not change over the course of the case, regardless of any fluctuation of the debtor's actual income during that time. It would be nonsensical to apply section 1325(b) to modifications and thereby require the use of income figure that may differ greatly from the debtor's income at the time of the modification." 8 Collier on Bankruptcy ¶1329.03.

This court finds that the disposable income test of 11 U.S.C. § 1325(b) *does not apply* in a post-confirmation modification scenario when the Chapter 13 Trustee is the proponent of said modification, and the debtor opposes the same. Notwithstanding, this court finds that Section 1322(a)(1) applies in post-confirmation modification settings pursuant to 11 U.S.C. § 1329(b)(1), which requires a debtor to submit additional income to fund the modified plan to increase payments to creditors under the Chapter 13 Trustee's supervision. See Keith M. Lundin, Lundin on Chapter 13, § 126.3, at ¶ 8, LundinOnChapter13.com (last visited November 29, 2023) ("When the trustee or a creditor successfully modifies the plan, for example, to increase payments to creditors to reflect an increase in the debtor's income, § 1322(a)(1) would require the debtor to submit additional earnings or income to fund the modified plan. This effect of § 1322(a)(1) would be

similar to the income-capturing effect of the disposable income test, but there are no obstacles from statutory construction to the application of § 1322(a)(1)"). "Future earnings and future income for §1322(a)(1) purposes arguably is not hobbled by the historical antecedents of CMI in new §101(10A). At confirmation of the original plan, the trustee or a creditor cannot play plan proponent and thus cannot leverage the debtor with respect to future earnings. But under §1329, the trustee or the holder of an allowed unsecured claim has standing to move for modification of the plan and may assert §1322(a)(1) to reach the debtor's actual earnings and actual income at the time of modification." Keith M. Lundin, Lundin on Chapter 13, § 126.6, at ¶ 23, LundinOnChapter13.com (last visited November 29, 2023).

The party requesting modification bears the burden of showing that "…there has been a substantial change in the debtor's ability to pay since the confirmation hearing and that the prospect of the change had not already been taken into account at the time of confirmation." 8 Collier on Bankruptcy ¶ 1329.03. "And, of course, an increase in the debtor's income should not be grounds for modification if the debtor's reasonable expenses have also increased commensurately." Id.

However, "[a] growing minority number of courts have more carefully analyzed §1329 to conclude that changed circumstances are not a requirement for modification of a plan after confirmation. This issue divides the circuits: the U.S. Courts of Appeals for the Fourth and Ninth Circuits have imposed a changed-circumstances requirement on the proponent of a postconfirmation modification; the Seventh Circuit has refused any such precondition." Keith M. Lundin, Lundin on Chapter 13, § 126.5, at ¶ 2, LundinOnChapter13.com (last visited November 29, 2023).

Our First Circuit stated in Barbosa, *supra*, that the requirement of unanticipated and substantial change in the debtor's financial circumstances is a doctrine of judicial origin. See id., 235 F. 3d. at 38, citing In re Witkowski, 16 F. 3d 739, 746 (7th Cir. 1994). It also adopted, in a modified manner, the Seventh Circuit approach in Witkowski, *supra*, concluding that:

> … the legislative history indicates that the application of the doctrine of *res judicata* was never discussed, considered, or contemplated by Congress. Oversight Hearings, *supra*.

Faced with this legislative intention, and the plain language of the statute, we are compelled to concur with the district court and the bankruptcy court that the Witkowski approach is the more sensible one. In re Barbosa, 236 B.R. [540, 547 (Bankr. D. Mass. 1999), *aff'd sub nom.*, Barbosa v. Solomon, 243 B.R. 562 (D. Mass. 2000), *aff'd*, 235 F.3d 31 (1st Cir. 2000)]. However, the bankruptcy judge was careful to note that "motions to modify cannot be used to circumvent the appeals process for those creditors who have failed to object confirmation of a Chapter 13 plan or whose objections to confirmation have been overruled." Id. Moreover, the bankruptcy judge noted that "§§ 1327 and 1330 accord significant finality to confirmation orders in Chapter 13 cases." Id. Accordingly, the court concluded that "while Witkowski may be a correct statement of the law, as a practical matter, parties requesting modifications of Chapter 13 plans must advance a legitimate reason for doing so, and they must strictly conform to the three limited circumstances set forth in § 1329." Id. at 548.

Upon a close analysis, the bankruptcy court's conclusions of law do accord significant finality to confirmed plans without requiring specific threshold tests not contemplated by the statute. Therefore, we adopt the Witkowski approach as modified by the bankruptcy court and refrain from adopting the substantial and unanticipated test for seeking a modification pursuant to § 1329.

Barbosa, 243 B.R. at 41.

The First Circuit further reasoned that it was Congress' intention to allow amendments to confirmed plans requested by the trustee and/or unsecured claimants that are based on a debtor's changed financial circumstances which in turn affect their ability to make future payments under the plan. See id., at 40, citing Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the Committee on the Judiciary House of Representatives, House of Representatives, 97th Cong., 1st and 2nd Sess. 22-23 (1981-1982). See also In re Salva, 2009 WL 2898822, *7, 2009 Bankr. Lexis 2707, *23 (Bankr. D.P.R. 2009) ("Therefore, even though the Trustee does not have to show a substantial and unanticipated change in circumstance as a requirement for requesting a post confirmation modification, which was not present in this case, he must show a 'legitimate reason' for the modification, which does not constitute a circumvention of the appeals process after failing to object to the confirmation of the original plan"); In re Soto, 2014 Bankr. Lexis 5127, *8-9 (Bankr. D.P.R. 2014) ("According to the standard established by the First Circuit case of Barbosa, the Chapter 13 Trustee must advance a 'legitimate reason' for the modification of the plan and strictly conform to the three limited

circumstances set forth in Section 1329. He must bear the burden of showing that there has been a change in the Debtor's 'ability-to-pay' standard that survives throughout the duration of the plan").

In the instant case, the Trustee's reason for requesting that the Debtor's plan be modified to include the special bonus is to provide a greater distribution to unsecured creditors, given that according to the Trustee they are receiving 12% of their claims and if the Debtor successfully completes her plan she would discharge approximately $7,020.00 in general unsecured debt.(dkt. #38, p. 1, ¶ 2). Notwithstanding, the Trustee contends that the Debtor has not disclosed the amount of monies received as the special bonus and thus, the Debtor has not placed the Trustee in a position to determine that the retention of said funds is reasonable and justified and is not in contravention of the best interests of creditors in this case (dkt. #38, p. 1, ¶ 3-4). The Debtor informed the court that prior to December 15, 2022, she used part of the special bonus to pay for various auto repairs for her 2012 Suzuki Vitara, church contributions, legal fees not related to the bankruptcy case, for an emergency fund amongst other reasonable and necessary expenses for her maintenance and support and that of her dependents (dkt. #48, p. 1, ¶ 2).

The court finds that in order to determine whether the Debtor's financial situation was altered, such Debtor must disclose the amount received from the special bonus, together with incurred expenses and supporting documentation. At this juncture, the Trustee has not satisfied its burden as he is missing information that is key to establishing a legitimate reason for requesting a plan modification and/or a change in Debtor's circumstances that impact her ability to make future payments under the current plan. Moreover, it is important to note that the *Order Confirming Plan* includes the following language regarding the Debtors continuing duty to inform: "Debtor(s) has (have) a continuing obligation, during the term of the plan, to report to the Court, thru the pertinent motion or amendment to schedules, any change to the (their) financial/economic circumstances, particularly income increase or decreases and the acquisition of assets by whatever means" (dkt. #15, ¶7). Thus, the Debtor is directed to provide the exact amount of the bonus that she received, the exact amount of monies incurred in the listed expenses, and supporting documentation of these amounts.

(E)    **May the Debtor Exempt Post-Petition Estate Property Under 11 U.S.C. § 1306(a)?**

The next issue the court will explore is whether the Debtor may amend their claimed exemptions to include post-petition estate property, including post-petition income (the special bonus) pursuant to Section 1306(a)(2) of the Bankruptcy Code by using the wild card exemption of Section 522(b)(5).

On March 17, 2023, the Debtor amended *Schedule A/B* to include a checking account in the amount of $5,000.00 with BPPR in the event this court determines that the special bonus is property of the estate (dkt. #35, p. 4, line 17.3). The Debtor also amended *Schedule C* to exempt $5,000.00 in a checking account with BPPR pursuant to 11 U.S.C. § 522(d)(5) (dkt. #35, p. 9). The Trustee's position is that certain courts have interpreted Section 522(b)(1) as only providing exemptions over property of the estate under Section 541, and not under Section 1306. To that effect, Section 541(a)(6) specifically excepts "…earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

"A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors. Exemption of property, together with the discharge of claims, lets the debtor maintain an appropriate standard of living as he or she goes forward after the bankruptcy case." 4 Collier on Bankruptcy ¶ 522.01. "The debtor's eligibility for exemptions, including the value of the property that may be exempted, is generally determined by the law and facts that are applicable on the date the petition is filed." Id. A debtor under Section 522 may claim certain property statutorily exempt by choosing either state or federal exemptions. See 11 U.S.C. § 522(b); Taylor v. Freeland & Kronz, 503 U.S. 638, 642 (1992). "Any dispute as to the debtor's eligibility for an exemption in such property likewise is determined based on the law and facts that are applicable as of the petition date." 4 Collier on Bankruptcy ¶ 522.05[1].

It is important to note that in Rockwell v. Hull (In re Rockwell), 968 F.3d 12 (1st Cir. 2020), the First Circuit explained the "snapshot" rule regarding the timeline for claiming exemptions and the incomplete snapshot which could occur under Section 541(a)(5) in the following manner:

Exemptions are determined at the time the debtor files for bankruptcy. White v. Stump, 266 U.S. 310, 313, 45 S. Ct. 103, 69 L. Ed. 301 (1924); Myers v. Matley, 318 U.S. 622, 628, 63 S. Ct. 780, 87 L. Ed. 1043 (1943) ('[T]he bankrupt's right to a homestead exemption becomes fixed at the date of the filing of the petition in bankruptcy …'); In re Cunningham, 513 F.3d 318, 318 (1st Cir. 2008). This maxim is called the "snapshot" rule because the debtor's financial situation is frozen in time, as if someone had taken a snapshot of it. In re Awayda, 574 B.R. 692, 697 (Bankr. C.D. Ill. 2017) (noting the 'snapshot rule [] controls the moment in time upon which a debtor's right to claim exemptions is based'). When the snapshot rule applies to an asset and the snapshot is "complete," the asset will retain whatever status (i.e., exempt or part of the estate) it had when the debtor filed for bankruptcy and cannot be altered by circumstances that change later. See In re Williams, 515 B.R. 395, 401 (Bankr. D. Mass. 2014) (explaining that the snapshot rule 'focus[es] on the facts and law as they exist on the petition date'); see also In re Cunningham, 513 F.3d at 318. Other times, the snapshot is "incomplete," meaning that the right circumstances could later alter the status of that asset relative to the bankruptcy estate, much like one can edit a snapshot after it has been taken. See, e.g., 11 U.S.C. § 541(a)(5) (requiring that up to 180 days after filing of the bankruptcy petition, property that the debtor acquires by bequest, devise, inheritance, divorce, life insurance, or death benefit becomes part of the estate).

968 F.3d at 18.

Section 522(d) includes the different types of property and the corresponding amounts that a debtor may exempt. Pursuant to Section 522(l), a debtor is required to file a list of property which he claims as exempt under Section 522(b) "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt" and thus, is no longer property of the bankruptcy estate. See 11 U.S.C. § 522(l). Fed. R. Bankr. P. 4003(a) provides, in pertinent part, that "[a] debtor shall list the property claimed as exempt under §522 of the Code on the schedule of assets required to be filed by Rule 1007." Moreover, Fed. R. Bankr. P. 1007(h)[4] recognizes that in a Chapter 13 scenario,

---

[4] Fed. R. Bankr. P. 1007(h) provides, in pertinent part: "[i]f, as provided by §541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 14 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the chapter 7 liquidation case, chapter 11 reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13 individual debt adjustment case. If any of the property required to be reported under this subdivision is claimed by the debtor as exempt, the debtor shall claim the exemptions in the supplemental schedule. This duty to file a supplemental schedule continues even after the case is closed, except for property acquired after an order is entered: (1) confirming a chapter 11 plan (other than one confirmed under §1191(b)); or (2) discharging the debtor in a chapter 12 case, a chapter 13 case, or a case under subchapter V of chapter 11 in which the plan is confirmed under §1191(b)." Id.

-19-

there are some types of property under Section 541(a)(5)[5] that the debtor acquires or becomes entitled to post-petition, and thus requires the filing of a supplemental schedule.

Fed. R. Bankr. P. 4003(b) establishes the procedure for objections to claimed exceptions; Fed. R. Bankr. P. 4003(c) provides that the objecting party has the burden to show by a preponderance of the evidence that the exemptions were not properly claimed. See *e.g.*, In re Thurston, 2007 WL 1860892, *7, 2007 Bankr. LEXIS 2207, *21 (Bankr. D. Mass. 2007), quoting In re Holt, 357 B.R. 917, 921 (Bankr. M.D. Ga. 2006), citing, *inter alia*, In re Carter, 182 F. 3d 1027, 1029, n. 3 (9th Cir. 1999) ("If the objector does not prove by a preponderance of the evidence that the exemption should be disallowed, then the claimed exemption will stand."). "Although an objecting party's evidence may shift the burden of production to the debtor, under [Fed. R. Bankr. P. 4003(c)], the ultimate burden of proof remains with the party objecting to exemptions." 9 Collier on Bankruptcy ¶ 4003.04.

On that vein, Section 522(b) of the Bankruptcy Code, 11 U.S.C. § 522(b), provides in pertinent part as follows:

> (1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.

> (2) Property listed in this paragraph is property that is specified under subsection (d), unless State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.

> (3) Property listed in this paragraph is

---

[5]Section 541(a)(5) of the Bankruptcy Code, 11 U.S.C. § 541(a)(5), includes the following as property of the estate:

> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

>> (A) by bequest, device, or inheritance;
>> (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or
>> (C) as a beneficiary of a life insurance policy or of a death benefit plan.

11 U.S.C. § 541(a)(5).

> (A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730 day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730 day period or for a longer portion of such 180 day period than in any other place.
>
> …

11 U.S.C. § 522(b)(1), (2) & (3)(A). Section 522(d) of the Bankruptcy Code, 11 U.S.C. § 522(d), provides in pertinent part as follows:

> (d) The following property may be exempted under subsection (b)(2) of this section:
>
> > (1)The debtor's aggregate interest, not to exceed $27,900 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.
> >
> > …
> >
> > (5) The debtor's aggregate interest in any property, not to exceed in value $1,475 plus up to $13,950 of any unused amount of the exemption provided under paragraph (1) of this subsection.

11 U.S.C. § 522(d)(1), (5).

The court is conscious that the cases cited by the Trustee, that is, <u>Garcia Matos</u>[6] and <u>Thurston</u>, pre-date <u>Law v. Siegel</u>, 571 U.S. 415 (2014), wherein the U.S. Supreme Court held that a Bankruptcy Court may not exercise its authority or its "inherent power" pursuant to 11 U.S.C. § 105(a) to "carry out" the provisions of the Bankruptcy Code to sanction abusive litigation practices by imposing an equitable "surcharge" on exempt property that is protected by the state's

---

[6] The court notes that the <u>Garcia Matos</u> *Opinion and Order* cited by the Trustee (Case No. 10-10289, dkt. #43) was subsequently reversed on the Trustee's failure to sustain his burden in objecting to the exemption. See <u>Garcia Matos v. Oliveras Rivera (In re Garcia Matos)</u>, 478 B.R. 506 (B.A.P. 1st Cir. 2012). The Bankruptcy Appellate Panel for our First Circuit (the "BAP" or "Panel") held that the refund of wages was earned prior to the debtor's bankruptcy petition, and thus it was pre-petition property of the estate subject to exemption. The Panel also found that whether the refund constituted "projected disposable income" was not a basis for denying the exemption. Moreover, a determination of whether all of the debtor's disposable income was devoted to the debtor's plan was required *only* after the trustee or some other party objected to the plan, and there was no objection to the plan at that time.

homestead law pursuant to Section 522(b)(3)(A) and which contravened the provisions of Section 522(k). As part of its analysis, the Supreme Court stated the following regarding exemptions:

> But even assuming the Bankruptcy Court could have revisited Law's entitlement to the exemption, § 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate. Rather, the statute exhaustively specifies the criteria that will render property exempt. See § 522(b), (d). Siegel insists that because § 522(b) says that the debtor "may exempt" certain property, rather than that he "*shall* be entitled" to do so, the court retains discretion to grant or deny exemptions even when the statutory criteria are met. But the subject of "may exempt" in § 522(b) is the debtor, not the court, so it is the debtor in whom the statute vests discretion. A debtor need not invoke an exemption to which the statute entitles him; but if he does, the court may not refuse to honor the exemption absent a valid statutory basis for doing so.

571 U.S. at 423-424 (italics original).

The court also notes that Thurston dealt with a debtor claiming a homestead exemption under Massachusetts state law and who thereafter amended the homestead exemption to also include the litigation settlement proceeds from a state court action based on flood damage to the homestead as exempt. Nevertheless, the U.S. Bankruptcy Court for the District of Massachusetts' analysis regarding its holding that the resulting litigation cash proceeds became property of the estate pursuant to 11 U.S.C. § 1306 and that the same may not be exempted under the state homestead statute because there is no provision for exempting cash proceeds is relevant to the legal analysis in the instant case.

There is limited jurisprudence regarding this particular legal issue; namely whether a debtor may exempt under 11 U.S.C. § 522(b) post-petition earnings/income pursuant to 11 U.S.C. § 1306(a). This court is cognizant that there are two cases, In re Padilla Cruz, 585 B.R. 255 (Bankr. D.P.R. 2018), and In re Walley, 525 B.R. 320 (Bankr. E.D. Va. 2015), which have a more expansive interpretation as to the statutory reach and timing of post-petition exemptions under 11 U.S.C. § 522(b).  In Walley, the U.S. Bankruptcy Court for the Eastern District of Virginia held that a debtor may claim an exemption from proceeds derived from a post-petition personal injury

-22-

action because these proceeds became property of the estate pursuant to Section 1306 because Sections 541 and 1306 do not have language that limit the individual debtor's exemptions to only property of the estate owned at petition <u>date</u>. <u>See</u> 525 B.R. at 325. In <u>Padilla Cruz</u>, the U.S. Bankruptcy Court for the District of Puerto Rico ruled that a debtor's post-petition accumulated sick leave had accrued under the temporal definition of the estate under Section 1306 and a debtor may exempt the proceeds of the unused but accumulated sick leave from property of the estate under Section 522(d)(5). <u>See</u> 585 B.R. at 262.

Both <u>Walley</u> and <u>Padilla Cruz</u> rely and expand upon the holding of <u>Carroll v. Logan</u>, 735 F. 3d 147 (4th Cir. 2013), where the U.S. Court of Appeals for the Fourth Circuit held that Section 1306(a) extends the timeline for including the kind of property specified in Section 541 in Chapter 13 cases, and thus, the U.S. Bankruptcy Court for the Eastern District of North Carolina properly included an inheritance that exceeded the post-petition statutory 180-day period outlined in Section 541(a)(5)(A). The forgoing notwithstanding, this court, for the reasons stated below, disagrees with the expansive interpretation of <u>Carrol v. Logan</u> regarding post-petition estate property under Section 1306(a) that do not fall within the contours of Section 541(a).

Section 522(b) specifically references Section 541. <u>See</u> 11 U.S.C. § 522(b)(1) ("[n]otwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection"). Section 522(b) *does not* reference Sections 1306, 1207 or 1115. <u>See</u> *e.g.*, <u>In re Thurston</u>, 2007 Bankr. LEXIS 2207, *24; <u>In re Cutignola</u>, 450 B.R. 445, 448 (Bankr. S.D.N.Y. 2011). "The superiority of §522(b)(1), the right to exempt property, extends to all subsections of Bankruptcy Code §541, including §541(a)(5)(A), which concerns property filed post-petition." <u>Cutignola</u>, 450 B.R. at 448, citing <u>In re Magness</u>, 160 B.R. 294, 297 (Bankr. N.D. Tex. 1993)

("There is no requirement that the debtor own the property at the time the case is filed, nor does [§522(b)] limit the exemption to the property described in a particular subsection of §541(a).").

Moreover, Section 541(a)(6) provides, in pertinent part, that property of the estate is comprised of "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, **except such as are earnings from services performed by an individual debtor after the commencement of the case"**, which are the type of property that becomes property of the estate in a Chapter 13 case pursuant to Section 1306(a)(2). 11 U.S.C. § 541(a)(6) (emphasis ours). The Debtor has not pointed to any provision in the Bankruptcy Code that allows exempting property of the estate pursuant to Section 1306. "The Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions." Law, 571 U.S. at 424, citing Hillman v. Maretta, 569 U.S. 483, 496 (2013), and TRW Inc. v. Andrews, 534 U.S. 19, 28-29 (2001).

The reference to post-petition property in Section 541(a)(5) is also present in Fed. R. Bankr. P. 1007(h) (cited above). The court notes, however, that Fed. R. Bankr. P. 1007(h) *does not* reference Sections 1306, 1207 and 1115 in reference to a debtor acquiring a post-petition interest in property and the requirement to file a supplemental schedule if such debtor is claiming said interest as exempt.

Therefore, this court finds that post-petition estate property under 11 U.S.C. § 1306(a) may not be exempted under 11 U.S.C. § 522(b).

### Conclusion

For the reasons explained herein, the court finds and concludes as follows:

1. The special bonus constitutes post-petition earnings/income pursuant to 11 U.S.C. § 1306(a). The Court grants the *Trustee's Motion Requesting Entry of Order to Inform* (dkt. #23) in part and, consequently, orders the Debtor to inform within fourteen (14) days the exact amount

-24-

of the special PAD bonus received in addition to the specific amount of monies incurred in the listed expenses with the supporting documentation that evinces these expenses.

2. The court also grants in part the *Trustee's Objection to Schedule B and Claimed Exemption in Schedule C* (dkt. #37) as to the Trustee's objection to the Debtor's exemption over the special bonus. At this juncture, for the reasons explained above, without the specific information as to the special bonus and the Debtor's expenses, the court is unable to adjudicate whether the Debtor may retain the special bonus or a portion of the same, and/or contribute the same through a modified plan.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of December 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge